> A will created an express trust in executors to receive the rents and profits of certain land and apply them to the use of a person during life, and also, on the death of the beneficiary, or at the expiration of 15 years after testator's decease, whichever event should occur last, to sell the estate and divide the proceeds in a certain manner. *Held* that, though the limitation predicated upon years is void, the alternative limitation based on the life of the beneficiary is valid, and renders the devise also valid.

In the matter of the judicial settlement of the account of William K. Murray, executor of Michael Welsh, deceased. Decree entered.

M. D. Gould, for executor.

Monfort & Faber, for Bridget Welsh.

Henry A. Monfort, special guardian for Johanna Welsh, Owen Welsh, and John Welsh, infants.

John J. Gleason, special guardian for Bessie Welsh, Mary Welsh, Joseph Welsh, Eugene Welsh, and Agnes Welsh, infants.

NOBLE, S. This matter comes before the court on the petition of William K. Murray, as executor, to have his accounts judicially settled as such. The accounts, as filed, are objected to by Bridget Welsh, widow, and Johanna Welsh, Owen Welsh, and John Welsh, children, of Joseph Welsh, a deceased nephew of the testator above named, and on the following grounds: First, on the ground that the provisions contained in the seventh, eighth, and twelfth paragraphs of the will of the testator, and the second paragraph of the codicil thereto, are void; second, that the executor erroneously credits himself in said account with payments, made under and pur-

suant to the alleged void provisions of the will and codicil, to Michael
Welsh as legatee, and then to the statement of interest of these ob-
jectors in the estate of the deceased as set forth in Schedule D of
the account, and also to the statements of the interest of the said
Michael Welsh, legatee, heretofore mentioned, and on the ground
that these statements are erroneous. Then follow minor objections,
hereafter disposed of, after which follows the last paragraph and
objection, numbered 6, which, together with Nos. 1 and 2, remains
undisposed of, and is as follows:

"(6) And on the ground that the said executor, in said account, fails to
credit these objectors with together being the owners of one equal, un-
divided one-half of all the real property left by the testator, covered by the
said void provisions of his said will and codicil."

The executor interposes answer to the objections by pleading
the terms of the will, his obedience to the instructions of the court,
etc., and practically asks the court's advice in the further admin-
istration of the estate.

Paragraph seventh of the testator's will follows:

"I give and devise to my executors in trust for the uses and purposes
hereinafter mentioned, to wit: In trust, in the first place, to let and rent
the same, and collect and receive all the rents, issues, and profits thereof,
and apply the same to the payment of the taxes, assessments, and insurance
thereon, and in keeping the buildings thereon in good repair. In trust, in
the next place, to pay the balance of such rents, issues, and profits to my
said nephew Michael Welsh, for his individual use and benefit, in the month
of January in each year during the term of his natural life: provided, that
prior to such payment my said nephew shall deliver to said executors satis-
factory receipts and vouchers showing that he has paid the taxes and
assessments, insurance and repairs, on the property at Little Neck herein-
before given to his life use. In trust in the next place to make the pay-
ments and repairs affecting the Little Neck property hereinbefore required
to be made by Michael Welsh, in case of his failure to make the same,
and to pay over the balance to my said nephew Michael Welsh. The prop-
erty given to my said executors in trust for the purposes aforesaid consists
of my three lots, and the houses thereon, situate on the southerly side of
Grove street, my one house and lot on the northerly side of Grove street,
and my two lots, with houses thereon, situate on the easterly side of Law-
rence street, all in the village of Flushing aforesaid."

Then follows paragraph 8, as follows:

"Eighth. Upon the death of my nephew Michael Welsh, or at the expira-
tion of fifteen years after my decease, whichever event shall last occur, I direct,
authorize, and empower my executors to sell at public or private sale the
said houses and lots herein devised to them in trust as aforesaid, and to
execute and deliver good and sufficient conveyance therefor; and after de-
fraying the expenses of such sale, I give and bequeath one equal half part
of the net proceeds of such sale to the children of my nephew Michael
Welsh who shall be then living, and to the descendants of such as shall be
then dead leaving issue surviving, to be divided among them so that the
children then living shall take equal shares, and the descendants of such
as have died shall take the share which their parent would have taken if
then living. I give and bequeath the other equal half part of the proceeds
of such sale to my nephew Joseph Welsh, now residing at Martinsburg,
West Virginia, and to his heirs and assigns, forever."

Out of these two paragraphs of the testator's will arise the ob-
jections interposed to the settlement of the executor's accounts as
aforesaid; the objecting parties contending that the testamentary

dispositions contained in paragraphs 7 and 8 are illegal and void, for the reason that they are in violation of the statute against the suspension of the power of alienation, and that both paragraphs (7 and 8) must be read together to find the true intent of the testator; that one supplements the other, and only when so taken together do they disclose the object of the testator,—the creation of a trust void as aforesaid. A perusal of paragraph 7 discloses that the testator devised to his executors certain specific real property upon a number of trusts, and particularly upon the trust to receive the rents and profits of this real property, and apply the net income and profits thereof to the use of his nephew Michael Welsh during his life. The other so-called trusts in this paragraph mentioned, not being permitted by statute, but being for purposes which may be lawfully performed under a power, are valid as a power in trust. With these last-mentioned eliminations, we have all the required elements of an express trust in real property: A lawful purpose; specified property to be held in trust; vesting of title in trustee; a certain term, and authority to receive rents and profits. Standing alone, the provisions contained in paragraph 7 are lawful, and create an express trust permitted by statute, limited by a term not greater than two lives in being, namely, during the life of the nephew Michael Welsh; and therefore there is no unlawful suspension of the power of alienation. But counsel for the widow and heirs of Joseph Welsh contend that paragraph 8 must be read with paragraph 7, and that in the eighth paragraph is found the limitation of the trust created in the seventh paragraph. This paragraph reads as follows:

"Eighth. Upon the death of my nephew Michael Welsh, or at the expiration of fifteen years after my decease, whichever event shall last occur, I direct, authorize, and empower my executors to sell at public or private sale the said houses and lots herein devised to them in trust as aforesaid, and to execute and deliver good and sufficient conveyances therefor; and after defraying the expenses of such sale, I give and bequeath one equal half part of the net proceeds of such sale to the children of my nephew Michael Welsh who shall be then living, and to the descendants of such as shall be then dead leaving issue surviving, to be divided among them so that the children then living shall take equal shares, and the descendants of such as have died shall take the share which their parent would have taken if then living. I give and bequeath the other equal half part of the proceeds of such sale to my nephew Joseph Welsh, now residing at Martinsburg, West Virginia, and to his heirs and assigns, forever."

The direction to sell and divide, contained in the eighth paragraph, and upon the alternative events upon which it is limited, is, by the objector's contention thought to be substituted or supplemented for or to that direction, contained in the seventh paragraph, which limits the trust estate during the life of the nephew Michael Welsh, and their desired construction would practically make the seventh paragraph, supplemented by the language of the eighth, read that the rents and profits of the devised realty should be paid to the nephew Michael Welsh during the term of his natural life, and, if he died immediately after the testator, for a period of 15 years. This, obviously, cannot be so; and the reading together of the provisions as to limitation in paragraph 8, with all the provisions

of paragraph 7, does not aid in the construction of paragraph 7, but would put a strained and tortured interpretation to that which standing alone needs no interpretation, namely, that paragraph 7 creates a legal trust with a legal limitation. Even if it were possible that the provisions contained in the eighth paragraph extended the trust period (the period in which the legal estate was to repose in the executor) to a time 15 years after the death of the testator, or, repeating the language of the eighth paragraph of the will, "Upon the death of my nephew Michael Welsh, or at the expiration of fifteen years after my decease, whichever event shall last occur," the alternative event being void on account of remoteness and in contravention of the statute against perpetuities, the trust would be saved on the happening of the other good alternative,— the death of the nephew Michael Welsh. Schettler v. Smith, 41 N. Y. 328; Hascall v. King, 162 N. Y. 134, 56 N. E. 515, 76 Am. St. Rep. 302. This doctrine has been sustained through a long line of decisions since the enactment of the Revised Statutes. When any one part of a will, or any other instrument, for that matter, is ambiguous or unintelligible, and needs interpretation, several parts harmonious with each other, or, if necessary, the whole instrument, must be read, to find the true intent of the testator or the parties thereto. This is a well-settled rule, and needs no further comment. So, to find the true intent of the testator as to the seventh paragraph of his will, all of his will has been read, to find his intention as expressed in that paragraph. Though there is no necessity at this time, yet it might elucidate and be beneficial, in the nature of advice to the executor, to have construed the eighth paragraph as far as it relates to the seventh. It is apparent that the chief object of solicitude of the testator was his nephew Michael Welsh, and he desired to, and did, make him his principal object of bounty, by devising the specified property in paragraph 7 of the will and that mentioned in paragraph 2 in the codicil in trust to his executor, to receive the rents and profits, and pay over the net income to his nephew during his life. The eighth paragraph provided that "upon the death of my nephew, Michael Welsh, or at the expiration of fifteen years after my decease, whichever event shall last occur—" Then follows an imperative direction to sell and convey all the property "herein devised to them in trust as aforesaid." Then, after defraying the expenses of the sale, it directs them to divide the net proceeds of the sale among a number of legatees mentioned, etc. The trust term having come to an end, and the object of the trust being executed by the receiving of rents and profits and the paying over of them to Michael Welsh during his life, and there being no further authority to receive rents and profits for any purpose, the devise contained in this eighth paragraph, if it needed any interpretation, which it does not, would be interpreted by the statute as a power. But the language of the paragraph itself is too explicit to be questioned. A power is given the executor to sell and convey, and to divide the net proceeds of the sale among legatees named therein. This power is imperative, and works an equitable conversion of the realty into personalty the moment the power be-

comes effective. So here the question is, when does it become effective? And the question arises, is the limitation upon which it arises lawful? This power is directed to be exercised "upon the death of my nephew Michael Welsh, or at the expiration of fifteen years after my decease, whichever event shall last occur." At the happening of one or the other event which should last occur. Here the same reasoning applies as above: The alternative event—the period of time to elapse after the death of the testator, should Michael Welsh die before then—is contrary to the provisions of the statute against perpetuities, and postpones the alienation for a period other than lives in being, and is void. But the other alternative, on the death of Michael Welsh, is good, being a period not greater than two lives in being, and sustains the devise. The power in trust is valid on that account. See cases cited. Another evidence as to the testator's intention as to what he intended in the seventh paragraph may be gleaned from the expression used in the eighth paragraph, where, defining what property he authorized and empowered his executors to sell, he pointed them out as "the said houses and lots herein devised to them in trust as aforesaid." Here he speaks of something done previously and as a whole, and in the second clause of the codicil of his will he reiterates the creation of the trust in the seventh clause, and enlarging the source from which the income is to be derived.

The validity of the twelfth paragraph of the testator's will and the second paragraph of the codicil being entirely dependent upon that of the seventh and eighth paragraphs, and they being valid, they are sustained with them.

In view of the foregoing, all objections are dismissed. Let a decree be entered accordingly.

Decreed accordingly.